ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

JUL 28 AM 11: 03

CLERK L. Ilender
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| FLOYD D. BLAKEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV 104-041 |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Floyd D. Blakey ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based upon claims of disability dating back to September 26, 2001, Plaintiff applied for DIB on February 13, 2002. Tr. ("R"), pp. 52-54. The Social Security Administration denied both his initial claim (R. 21) and his request for reconsideration. R. 22. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing at which Plaintiff testified and was represented by counsel, the ALJ issued an unfavorable

decision dated March 21, 2003.[1] R. 14-20.

Applying the five step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability, "with subsequent work qualifying as an unsuccessful work attempt."

2. The claimant has medical impairments, namely degenerative joint disease and gouty arthritis, which together affect his legs, knees, and spine, and hypertension, that are considered "severe" based on the requirements in the Regulations, 20 CFR § 404.1520(b).

3. These medically determinable impairments, "considered singly or in combination," do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565) but retains the residual functional capacity and upper body strength to perform medium exertional level work[2] with the following limitations: no frequent or repetitive stooping, kneeling, crouching, crawling, climbing, balancing, or walking on uneven surfaces. Furthermore, the claimant cannot stand or walk for greater than ten (10) minutes continuously, and should avoid unguarded heights, dangerous machinery, and other hazards.

5. Based on the claimant's age, education, and work experience, Medical-Vocational Rule 202 used as a framework for decision-making, and the testimony of the vocational expert, there are a significant number of jobs in the national economy that the claimant

---

[1] A Vocational Expert, Nan W. DeColaines, also testified at the hearing. R. 14, 49-50, 265-71

[2] Medium work involves:

lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

> could perform, including: cashier, production examiner, hand packager, and general clerk. . . . Thus, the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

R. 17-19.

When the Appeals Council ("AC") denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 4-6. Having failed to convince the AC to review his case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff now argues that the ALJ erred by: 1) failing to find that the condition of Plaintiff's knees "satisfies the criteria contained in the Commissioner's listing for major dysfunction of a joint," 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.02, thus rendering Plaintiff "presumptively disabled" under 20 C.F.R. § 404.1525(a); and 2) failing to include all of Plaintiff's restrictions in the hypothetical question posed to the Vocational Expert ("VE").

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d

3

1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A.  Whether the ALJ erred by not finding that Plaintiff's knee condition rendered him presumptively disabled.**

Plaintiff contends the ALJ ignored evidence that his knees satisfy the criteria for

"major dysfunction of a joint." Pl.'s Mem., pp. 7-9. The criteria for major dysfunction of a joint are: 1) gross anatomical deformity, 2) chronic pain and stiffness resulting in limitation of motion or abnormal joint motion, *and* 3) findings via "medically acceptable imaging" of joint space narrowing, bony destruction, or ankylosis. Listing 1.02A, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2003). In addition, the joint dysfunction must lead to the inability to ambulate effectively.[3] Id. In order to ambulate effectively, Plaintiff must be:

> capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. [He] must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing 1.00B2b(2), 20 C.F.R. Part 404, Subpart P, Appendix 1 (2003).

First, it should be noted that Plaintiff's claim that he cannot walk is belied by his own hearing testimony. As noted by the ALJ, Plaintiff testified that he could walk or stand continuously for up to ten (10) minutes.[4] R. 19, 247. In addition, Plaintiff testified that he

---

[3]It should also be noted that a claimant who contends that his impairment meets or equals a listing must present medical evidence as to *all* the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990)("For a claimant to show that his impairment matches a listing it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

[4]Indeed, in a disability report written in February 2002, Plaintiff described "hav[ing] problems standing and walking *after 4 to 5 hours on the job.*" Id. at 61 (emphasis added). In a separate questionnaire completed in March 2002, Plaintiff describing being able to walk for fifteen (15) minutes at a time. Id. at 95. Perhaps also of note, Plaintiff's wife filled out a questionnaire in March 2002, wherein she stated that Plaintiff could walk, drive a car, get

5

walked twice daily from his mobile home to his mailbox and back; Plaintiff estimated that the distance between his home and the mailbox was "about 100 [feet]." Id. at 246. The ALJ also specifically noted that Plaintiff was treated for a tick infestation he suffered after an "excursion" into a wooded area near his home after the alleged onset of disability. Id. at 15. The ALJ also noted Plaintiff's testimony regarding household activities (see id. at 16, 18), wherein Plaintiff described completing household chores. See id. at 245-46. In addition, at the hearing Plaintiff described being able to occasionally bend and pick up objects from the floor weighing between twenty-five (25) and thirty (30) pounds. R. 247. Finally, the ALJ noted that his own observations of Plaintiff showed that although Plaintiff did limp, he could ambulate without the use of any assistive devices. R. 15. In sum, Plaintiff's own testimony and the ALJ's observations at the hearing support the ALJ's conclusion that Plaintiff could walk effectively.

Of course, the ALJ also took note of Plaintiff's professed difficulty in walking or standing for longer periods, as well as negotiating stairs[5] and uneven ground, which he took into account in assessing Plaintiff's limitations. R. 16. It is also true that Plaintiff testified that he did not help his wife with any of the family shopping.[6] R. 246. Nevertheless, the

---

places without help, do thirty (30) minutes of vacuuming, and shop at a Walmart retail store. Id. at 97-98. She also explained that Plaintiff picks up his mother and takes her "to see his father who is in a nursing home" about "once a week." Id. at 99.

[5]It fact, Plaintiff testified that he could negotiate stairs, but that he had to go up them "one foot at a time." R. 241. Plaintiff also explained that he could go down stairs "pretty good." Id. at 245.

[6]The Court finds this strange in light of Plaintiff's admission that he could drive himself places. R. 255; see also discussion *supra* at footnote 3. Moreover, in a questionnaire completed in March 2002, Plaintiff stated that he could drive and shop, although he could not walk in a shopping mall for "very long." Id. at 93, 94. It should also be noted that on

6

ALJ's conclusion that the condition of Plaintiff's knees did not amount to "major dysfunction of a joint" is also supported by the medical evidence.

The ALJ relied upon a consultative evaluation performed by Dr. R. J Williams in April 2002 as "the most complete record of examination of the claimant." R. 15. The ALJ also noted that Plaintiff was seen intermittently ("at four or five month intervals") by his treating physician, Dr. A. Hilliard. The ALJ determined that Plaintiff's impairments did not "meet[] or equal[] those of any conditions listed in Appendix 1 to Subpart P of Social Security Regulation No. 4" and went on to state:

> This determination is consistent with prior assessments by non-examining medical professionals reviewing this record for the Social Security Administration. It is not contradicted by the objective record in this case.

Id. at 17.

The ALJ's summary of the evidence is accurate and his conclusion was reasonable. A radiological report regarding Plaintiff's left knee in September 2001 revealed only "mild narrowing of the joint space with minimal sclerosis and osteophyte formation consistent with mild DJD [degenerative joint disease]." R. 137. Put another way, the radiological findings regarding Plaintiff's left knee were "unremarkable." Id. On the other hand, a radiological report regarding Plaintiff's right knee, also rendered in September 2001, indicated more severe narrowing, sclerosis, and osteophyte formation than that present in the left knee, consistent with "moderate DJD." Id. at 138. Nevertheless, contrary to Plaintiff argument, these radiological findings are insufficient to demonstrate that Plaintiff is disabled. Dr.

---

this questionnaire Plaintiff described mowing the lawn on a riding mower, doing "4 hours" of chores without help, walking, and visiting with people outside his home on a weekly basis. Id. at 94.

Williams, who examined Plaintiff and saw Plaintiff's X-rays, determined that Plaintiff had arthritis with degenerative joint disease in both knees, but also noted that Plaintiff retained "full range of motion of the upper and lower extremities" and that he had adequate motor strength in both the upper and lower extremities as well.[7] Id. at 182.

Simply put, neither Dr. Williams nor any other examining source found abnormal or limited joint motion, precluding a finding that Plaintiff had "major dysfunction of a joint." In addition, Dr. David Maxwell, a non-examining consultant, reviewed Plaintiff's file and determined that Plaintiff was not disabled. Id. at 188-95. It should be noted that the ALJ was obligated to consider the opinions of Drs. Wiliams and Maxwell. See 20 C.F.R. § 404.1572(c)(1)(weight to be given examining source) & (f)(2)(i)(Agency consultants' opinions must be considered). Moreover, as the ALJ correctly noted, Plaintiff did not introduce into the record any evidence from a treating or examining source, including Dr. Hilliard, to contradict Dr. Maxwell's consultative opinion. Simply put, the ALJ did not err in failing to find "major dysfunction of a joint" and his decision is supported by substantial evidence. Plaintiff's impairments, although severe, did not render him presumptively disabled.

**B.     Whether the ALJ erred by failing to include all of Plaintiff's restrictions in his hypothetical question to the VE.**

Next, Plaintiff argues that the ALJ erred by not including restrictions against reaching, handling, and feeling in his hypothetical question to the VE. Pl.'s Mem., p. 10. As happened in this case, once the ALJ determines that a claimant may not return to his past

---

[7] Of course, consistent the ALJ's conclusions, Dr. Williams determined that Plaintiff's ability to stand and walk for long periods was very limited. Id. at 183.

8

work, the burden shifts to the Commissioner to show the existence of other types of substantial gainful employment that the claimant can perform given his age, education, previous work experience, and residual functional capacity. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). In this regard, the ALJ properly consulted a VE in conjunction with the Medical-Vocational Guidelines. Citing Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995), Plaintiff contends that the ALJ erred by failing to ask the VE hypothetical questions specifically including all of Plaintiff's limitations. Accordingly, Plaintiff contends the VE's testimony does not accurately reflect Plaintiff's limitations and thus do not show the existence of jobs in the economy that Plaintiff can perform.

Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. See McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) *(per curiam)*; Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) *(per curiam)*; see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations, including that a claimant "often" has deficiencies in concentration, persistence or pace, is grounds for remanding case for further proceedings). However, Plaintiff's posited limitations regarding reaching, handling, and feeling are not adequately reflected by the record, and the ALJ did not err by not including such restrictions in the hypothetical question.

Here Plaintiff relies upon a single sentence in Dr. Williams's evaluation: "[Plaintiff]

9

does exhibit physical limitations that would interfere with reaching, handling, feeling, stooping, bending, walking, lifting, or climbing." R. 183. However, Dr. Williams did not indicate to what extent any of those functions would be limited.[8] Thus, the ALJ properly relied upon the record evidence as a whole to determine Plaintiff's limitations, rather than this isolated sentence in Dr. Williams's evaluation. In addition, as correctly noted by the Commissioner, nothing in Plaintiff's treatment records indicates the existence of any longstanding, significant problem with Plaintiff's hands or arms. See id. at 131, 133-36, 139-43, 215-218.

Importantly, State agency physician Dr. Maxwell (again, whose opinion is not rebutted) did not conclude that Plaintiff had such limitations. See R. 191, 193, 195. In addition, although Dr. Williams did note that Plaintiff had decreased range of motion in his spine, Dr. Williams also found Plaintiff to have an otherwise normal range of motion in his extremities. Simply put, contrary to Plaintiff's argument, Dr. Williams's statement alone, quoted above, is insufficient to show that Plaintiff is not able to perform any job involving "extensive use of the hands." Pl.'s Mem., p. 10. Finally, Plaintiff's claim is further eroded by the fact that nothing in the record from Plaintiff's treating physician, Dr. Hilliard, indicates that Plaintiff had any longstanding problems using his hands or arms. In sum, the ALJ reasonably relied upon the uncontroverted opinions of Agency consultants.

Plainly put, the ALJ's hypothetical questions reflected an accurate view of Plaintiff's

---

[8] It should also be noted that, as a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford v. Commissioner of Soc. Sec., 363 F.3d 155, 1160-61 (11th Cir. 2004) (*per curiam*).

impairments. The ALJ found that Plaintiff could perform medium exertional work, but could not engage in stooping, kneeling, crouching, crawling, climbing, balancing, walking on uneven surfaces, walking or standing for longer than 10 minutes at a time, or exposure to unguarded heights or dangerous machinery. R. 19. In response to a hypothetical question reflecting this residual functional capacity, the VE stated that Plaintiff could perform a range of sedentary occupations including cashier, production examiner and checker, and packager. R. 267-70. Plaintiff's claim that the hypothetical question should have included additional limitations lacks support from the record. In sum, the Commissioner's decision is amply supported by the record and should not be disturbed.

## IV. CONCLUSION

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record. Furthermore, the ALJ carried his burden to demonstrate that Plaintiff could perform work existing in the national economy. Accordingly, the Court **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 28th day of July, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

11

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

BENJAMIN J. JOHNSON
KIPLER S. LAMAR
EDMUND A. BOOTH, JR.

CASE NO: CV 104-041
DATE SERVED: 07/28/05
SERVED BY: JOE HOWELL

☐ Copy placed in Minutes
☐ Copy given to Judge
☑ Copy given to Magistrate